UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RICKEY IRWIN HIGDON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:11-CV-194 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| PATRICK CANNON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **M E M O R A N DU M**

Alleging violations of their civil and human rights, disability discrimination, and other claims, *pro se* Plaintiffs Ricky Irwin Higdon and Johnny Eugene Goins (collectively "Plaintiffs") filed suit against Defendants Sheriff Patrick Cannon, Magistrate Judge McCormick,[1] Chief of Police Jackie Womack, Probation Officer Mary Jane Garner, Dade County District Attorney Buzz Franklin, Chief Probation Supervisor Charles Payton, and various unidentified Detectives and Officers from the Dade County Sheriff's Department (collectively "Defendants"). Now before the Court are two motions filed by Defendants. First, Defendants Cannon, McCormick, and Womack, making a special appearance under Fed. R. Civ. P. 12(b) and (3), move to dismiss the case for lack of jurisdiction, or in the alternative, a more definite statement (Court File No. 12). Second, Defendants Franklin, Garner, and Payton have filed a pre-answer motion to dismiss, or in the alternative, a more definite statement (Court File No. 15). In response, Plaintiffs filed a "motion for compliant [sic] to remain in the court located named above and dismiss Defendants['] motion for it to be relocated"

---

[1] Plaintiffs' complaint does list the Magistrate Judge's first name. According to the Dade County Georgia website, the Magistrate Judge is Joel McCormick. Dade County, Georgia, Magistrate Court, http://www.dadecounty-ga.gov/MagistrateCourt.cfm?lid=1130 (last visited Feb. 6, 2012).

(Court File No. 19). Defendants replied to this response (Court File Nos. 21, 22). Having considered these filings and attached memoranda, the Court concludes it does not have personal jurisdiction over Defendants, and will therefore **GRANT** Defendants' motions to dismiss the complaint on this basis.

I.     **FACTUAL & PROCEDURAL BACKGROUND**

    A.     **Factual Background**[2]

In a densely packed and typo strewn nine-page complaint, Plaintiffs Rickey Higdon and Johnny Goins allege a troubling series of wrongs suffered at the hands of Defendants, all officials from Dade County, Georgia. Although the complaint's chronology is at times difficult to follow, Plaintiffs claim they have faced harassment since approximately January 2000. Plaintiffs, who identify themselves as homosexual males who have been in a long-term relationship for thirty-three years, moved to Chattanooga, Tennessee in the 1980s to attend college and find work. Plaintiffs would occasionally visit Trenton, Georgia, located in Dade County, to visit Plaintiff Goins's parents. After his parents died in 2002, Plaintiffs' visits to Dade County decreased.

According to their complaint, both Plaintiffs have suffered from disabilities and other injuries.[3] In March 2000, Goins was visiting Higdon in the hospital when Goins suffered an injury to his hip that required multiple surgeries. While Goins was recovering, Higdon–who appears to have been out of the hospital at this point–traveled to a pharmacy in Trenton, Georgia to fetch

---

[2] Unless otherwise noted, all facts in this section are drawn from Plaintiffs' complaint and are, on account of the procedural posture of this case, presented in the light most favorable to Plaintiffs. Although the Court is reciting the facts in this light, the Court is not intending to suggest that it does or does not find the facts plausible.

[3] Plaintiffs' complaint indicates Higdon has been hospitalized more than fifty times since November 1996 and Goins has had twelve surgeries since 2000.

2

medication for Goins. After Higdon signed his own name when picking up Goins's medication, the pharmacy called the police and Higdon was arrested and, according to the complaint, charged with obtaining a controlled substance by fraud. Goins alleges the Sheriff had specifically told him Plaintiffs had been targeted on account of their sexual orientation (Court File No. 2, Complaint, p. 4).

When Higdon appeared in court on this charge, Goins sought and received leave from the judge to speak on Higdon's behalf. Goins allegedly explained he had given Higdon permission to retrieve medication for him. At that point, the judge instructed Goins to refrain from speaking further, and then "began calling [Higdon] a drug addict" (*id.* at p. 5). When Higdon became ill in response to the judge's comments, Goins sought to assist Higdon. Before Goins was able to provide any assistance, however, the "Sheriff and one of his deputies shoved [Goins] into a corner and began to physically assault [him]" (*id.*). No one intervened. Higdon was subsequently sentenced to eight years of probation.

It appears Plaintiffs faced no problems for a handful of years after these incidents in 2000. Some number of years later, however, Higdon, Goins, and Goins's niece went to Higdon's annual appointment to re-certify Higdon for receipt of benefits. At that appointment, the case worker, during a standard background check, found an outstanding warrant for Higdon from Dade County for being an escaped violent felon, apparently in connection with his arrest in 2000. Higdon was then taken into custody, where he remained for approximately five and half months before he was released. Goins then went to Dade County to pick Higdon up.[4]

---

[4] Although not clear, the complaint appears to indicate Higdon was not held in detention in Dade County for the full time he was in custody. He may also have been in jail in Tennessee.

Until January 2010 Plaintiffs experienced another period of relative calm. In January 2010, Higdon received a letter from the Social Security Administration informing him the warrant "from five years earlier"[5] had been reinstated because he had "moved out of the state Georgia, and Dade County without permission and owed some court cost" (*id.* at p. 6). Plaintiffs were surprised by this letter because they have lived in Chattanooga for over thirty years. Goins thus decided to return to Dade County to discuss the matter with the Sheriff there. Before leaving for Dade County, Goins arranged for Higdon's home health nurse, who had cared for Higdon for the past four or five years, to stay with him. His first conversation with the acting Sheriff did not disclose any information, but Goins made arrangements to return again a few days later.

Before returning to the Dade County Sheriff's Office, Goins called Defendant Mary Jane Garner, who was serving as Higdon's probation officer. According to the complaint, Defendant Garner expressed anger at Higdon's failure to report, allegedly telling Goins she wanted him to "unplug any medical equipment, put [Higdon] in an ambulance or any other vehicle and bring [Higdon] to the jail in Trenton so I can place him in jail at once" (*id.*). When Goins told Garner he would refuse to adhere to Garner's instructions regarding Higdon, she allegedly told Goins that if he did not comply, "she would come with the police to our home and break in if necessary and drag him out" (*id.*).[6]

---

[5] It is unclear whether this reference to "five years earlier" in the complaint is a mistake by Plaintiffs or refers to some event the complaint does not recount. The only warrant otherwise described in the complaint would stem from Higdon's arrest in 2000–ten year before receipt of the letter from the Social Security Administration.

[6] According to Goins, Higdon's medical problems were so great at that time that if Goins had tried to move him–in order to comply with Garner's directive–Goins would have been arrested for abuse and neglect of Higdon. In the complaint, Goins alleges he received this information after explaining his situation to "the Physician" and the Tennessee Department of Adult Services.

4

Following this conversation with Defendant Garner, Goins returned to the Dade County Sheriff's Department. There Goins spoke with the acting Sheriff, with whom Goins had earlier spoken, and another unidentified male. According to the complaint, these two individuals had learned, since Goins's last visit, considerable personal information about both Goins and Higdon from Higdon's personal nurse.[7] Specifically, these two individuals learned Goins and Higdon were homosexual and lived together as life partners. The complaint alleges the acting Sheriff then proceeded to disparage Goins on the basis of his sexual orientation. Moreover, after this encounter, the complaint alleges the Dade County Sheriff's Department took other steps to harm Plaintiffs, including 1) telling the hospital where Higdon was (at some point) located that Higdon had forged a signature on a document; 2) contacting the Social Security Administration with the result that Higdon had to pay back his disability payments from 2005-2010; 3) threatening to charge, and then charging, Goins with false statements or identity fraud if he ever came back to Georgia (*id.* at pp. 7-8); and 4) sending Goins a "Notice of Arraignment" based on a false charge in July 2011.

Because the disposition of Defendants' motions ultimately turns on the Court's lack of personal jurisdiction over Defendants, it is important to mention briefly the extent to which the allegations in this case do and do not touch upon the Eastern District of Tennessee. First, Plaintiffs are and have been residents in Chattanooga for over thirty years. Second, according to their response, Plaintiffs receive all of their medical treatment and services in Chattanooga. Nothing in

---

[7] The complaint alleges the personal nurse's sharing of information violated "HIPPA Laws," which the Court assumes refers to the 1996 Health Insurance Portability and Accountability Act ("HIPAA"). 42 U.S.C. §§ 1301 *et seq.* The complaint, however, does not name the nurse as a defendant. In any case, HIPAA enforcement actions are the province of the Department of Health Human Services and the Office of Civil Rights within the Department of Justice. *See* DHHS HIPAA Enforcement Rule, 45 C.F.R. §§ 160 and 164 (2006).

5

the complaint or response brief, however, suggests that any of Defendants' actions in this case took place in Tennessee. In their response brief, Plaintiffs allege Defendants "placed false charges (more than once), and used this incorrect information to involve numerous" entities within the Eastern District of Tennessee (Court File No. 19), but the complaint neither alleges nor implies this fact. Defendants are all employees of Dade County, Georgia.

**B.    Procedural Background**

Based on the facts set out above, Plaintiffs seek various forms of relief. They ask the Court to 1) reinstate medical and Social Security benefits for Plaintiffs; 2) reprimand Defendants for their actions; 3) reimburse Plaintiffs for any and all fees associated with this case; and 4) eight million dollars in damages. Defendants have moved to dismiss Plaintiffs' complaint or, in the alternative, a more definite statement.

**II.    LEGAL STANDARDS**

**A.    *Pro Se* Pleading Standard**

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011) (citation omitted). *Pro se* plaintiffs must still comply with Rule 8 of the Federal Rules of Civil Procedure which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties*, 55 F.3d at 1103-04; *Allard v. Weitzman* (*In re*

6

*DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard*, 76 F.3d at 726; *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Delorean Motor*, 991 F.2d at 1240 (citations omitted).

### B. Personal Jurisdiction

Before considering the merits of a dispute between parties, a federal court must first have jurisdiction to hear the matter. In addition to jurisdiction over the dispute itself, a court must have jurisdiction over the parties to that dispute. Jurisdiction over the parties, known as personal jurisdiction, is not at issue where all parties willingly submit to a court's authority to hear a case. Where, as here, defendants[8] in a case hale from out of state and dispute the court's jurisdiction over them, the court can only exercise personal jurisdiction over those out-of-state defendants if they maintain "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Thus, courts consider whether the exercise of personal jurisdiction over parties is consistent with the Due Process Clause in the United States Constitution.

Under federal due process analysis, there are two bases of personal jurisdiction: "(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state;

---

[8] "Practically speaking, plaintiffs always concede personal jurisdiction, so the inquiry is typically restricted to defendants; because defendants who reside in the forum state will always be subject to the personal jurisdiction of the court, the inquiry is in most cases further restricted to non-resident defendants." *Conn v. Zakharov*, – F.3d —, 2012 WL 86716, at *2 (6th Cir. Jan. 12, 2012)

7

and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn v. Zakharov*, – F.3d —, 2012 WL 86716, at *3 (6th Cir. Jan. 12, 2012). Plaintiffs' *pro se* complaint does not identify the jurisdictional basis on which Plaintiffs rely.[9] Neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit has defined a precise test for courts to follow when determining whether the exercise of general jurisdiction is proper. *Id.* The touchstone for general jurisdiction is whether an out-of-state defendant's contacts with the forum state are "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & n. 9 (1984), and if so, general jurisdiction is proper even if the underlying action "is unrelated to the defendant's contacts with the state," *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citations omitted).

By contrast, a three-factor test exists for determining whether a court properly exercises specific personal jurisdiction over an out-of-state defendant.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).[10] The "purposeful

---

[9] Defendants assume Plaintiffs rely on specific jurisdiction, *see* Court File No. 13, p. 3 ("It appears from the complaint that Plaintiffs are asserting that this Court has specific jurisdiction over these Defendants."), and thus address only this basis of personal jurisdiction. The Court does not make the same assumption, and thus considers whether personal jurisdiction over Defendants is appropriate on either a specific or a general basis.

[10] After first announcing this test in 1968, the Sixth Circuit has continued to rely on the same formulation. *See Conn*, 2012 WL 86716, at *4 (citing *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir.2002)).

availment" requirement–often referred to as the *sine qua non* of personal jurisdiction–"ensures that a defendant will not be haled in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or third person." *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2008) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal citations and quotation marks omitted). Although the out-of-state defendant's physical presence in the forum state is not required, specific personal jurisdiction is only proper where the defendant himself has created a substantial connection with the forum state. *Burger King*, 471 U.S. at 476.

On the second prong, a court must determine whether a plaintiff's cause of action arises from defendant's contacts with the forum state. In making this determination, a court assesses "whether the causes of action were 'made possible by' or 'like in the wake of' defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Products*, 503 F.3d at 553 (internal citations omitted). Finally, if the court finds these first two prongs satisfied, it must decide whether the exercise of jurisdiction over the defendant is reasonable. *S. Mach.*, 401 F.2d at 381. In considering whether exercise of personal jurisdiction is reasonable under this third prong, courts look to four factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

Whether relying on either the general or the specific theory of personal jurisdiction, the plaintiff bears the burden of establishing "specific facts" demonstrating the exercise of personal jurisdiction is proper, and the plaintiff must establish such facts by a preponderance of the evidence. *Conn*, 2012 WL 86716, at * 2. Where, as here, the court considers a motion to dismiss under Fed.

9

R. Civ. P. 12(b)(2) without the aid of an evidentiary hearing, the plaintiff need only a make a prima facie case the court has personal jurisdiction. *Id.* Finally, given the procedural posture of the case, the Court must view the pleadings in the light most favorable to Plaintiffs, but can also consider Defendants' undisputed factual assertions. *Id.*

## III. ANALYSIS

### A. Introduction

From Plaintiffs' complaint and subsequent filings, it is apparent they have no legal training or experience. This lack of familiarity works to their disadvantage in attempting to maintain their case in federal court where federal procedural and substantive rules and laws require knowledge and familiarity with federal practice. While the Court is sympathetic to their claim and their efforts to surmount these dispositive motions, in the final analysis their lack of legal knowledge is fatal.

The Court now explains in detail why their case may not go forward.

### B. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants put forth a number of theories in support of their motion to dismiss Plaintiffs' complaint. First, Defendants argue the Court does not have personal jurisdiction over them. Second, Defendants claim the complaint should be dismissed for improper venue. Third, Defendants Franklin, Payton, and Garner assert a number of Plaintiffs' claims are time-barred. Finally, should the Court find dismissal inappropriate, all Defendants move the Court to require Plaintiffs to submit a more definite statement of their claims pursuant to Fed. R. Civ. P. 12(e). Because the Court concludes it must dismiss Plaintiffs' complaint for lack of personal jurisdiction, it does not reach Defendants' other arguments.

#### 1. General Jurisdiction

The Court first considers whether due process permits the assumption of general jurisdiction under the facts of this case. Without explanation, Defendants assume Plaintiffs rely on a specific jurisdiction theory, and thus do not address in their motion whether personal jurisdiction over Defendants is proper on a general jurisdiction theory. Although Plaintiffs have not advanced arguments in support of general jurisdiction, the Court nonetheless considers whether personal jurisdiction is proper on this basis. The Court concludes it is not.

The exercise of general jurisdiction over an out-of-state defendant is appropriate where that defendant maintains "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416. The Sixth Circuit recently held a district court did not have general jurisdiction over an out-of-state defendant who owned property and made yearly trips to the forum state. *Conn*, 2012 WL 86716, at * 8-10. In reaching that conclusion, the Sixth Circuit, looking to treatises and other courts, noted for a defendant's contacts to be continuous and systematic those contacts must "approximate physical presence within a state's borders, *id.* at *8 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000),[11] and must be "very substantial, indeed . . . quite rigorous" (citing Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5, at 520 (3d ed. 2002)).

Here, the Georgia Defendants do not maintain the kind of continuous and systematic contacts with Tennessee necessary to establish general jurisdiction. Indeed, nothing in the complaint suggests Defendants maintain any sort of contacts with Tennessee. If anything, the complaint emphasizes Defendants were only operating in Georgia. *See, e.g.*, Court File No. 1, at p. 8 ("And

---

[11] This case was overruled on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006).

11

the Acting Sheriff that made the threats that *if I came back into Georgia* he would make sure I was arrested. . . . ) (emphasis added). Even if any of Defendants owned property in Tennessee–and no evidence suggests this to be true–this alone would not be enough to subject them to general jurisdiction. *See Conn*, WL 86716, at * 9. Because these Georgia Defendants do not have systematic and continuous contacts with Tennessee, imposition of general jurisdiction over them is inconsistent with the Due Process clause.

### 2. Specific Jurisdiction

The Court now turns to specific personal jurisdiction. Defendants argue Plaintiffs fail to satisfy the three-part test for establishing specific jurisdiction. In response, Plaintiffs offer a number of reasons the Court should maintain jurisdiction over this case: 1) Plaintiffs reside in the Eastern District of Tennessee and prosecuting the case in Chattanooga would be more convenient than in Georgia; 2) Defendants "placed false charges" against Plaintiffs, and "used this incorrect information to involve numerous" entities located in Tennessee; 3) it would be easier for Defendants to come to Chattanooga than it would be for Plaintiffs to travel to the district court in Rome, Georgia; and 4) it would be "almost impossible" to subpoena witnesses based in Tennessee to appear in district court in Rome, Georgia (Court File No. 19). In their reply briefs, Defendants contend Plaintiffs fail to allege, let alone demonstrate, any connection between incidents taking placing in Tennessee and Defendants. Even construing Plaintiffs' complaint under the more liberal *pro se* standard, the Court concludes the complaint fails to establish specific facts by a preponderance of the evidence demonstrating the exercise of specific jurisdiction is proper. Accordingly, Plaintiffs' complaint must be dismissed.

Before discussing the *Southern Machine* three-part test for specific jurisdiction, the Court

12

will briefly address three of Plaintiffs' arguments in its response brief. First, Plaintiffs' first and third arguments rely on their convenience as set against the convenience of Defendants. As Defendants correctly note in their reply brief, "Plaintiffs' residence in Chattanooga and the location of their healthcare providers in Chattanooga are irrelevant to whether this Court has personal jurisdiction over these Defendants" (Court File No. 21, p. 4). Second, Plaintiffs' assertion that it would be "almost impossible" to subpoena witnesses from Tennessee to appear in federal court in Rome, Georgia does not properly account for Rule 45(b)(2)(B) of the Federal Rules of Civil Procedure, which permits service of a subpoena outside a court's district but "within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection."[12] Accordingly, none of these arguments persuades the Court the imposition of personal jurisdiction is proper.

Plaintiffs stumble on the first prong of the three-part test to establish specific personal jurisdiction: that "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach.*, 401 F.2d at 381. First, Defendants are all employees of the state of Georgia, and nothing in the record suggests they live or conduct any business in the state of Tennessee. Moreover, and as noted in the discussion of general jurisdiction, nothing in Plaintiffs' complaint indicates any of Defendants took any of actions alleged in the state of Tennessee. *See also* Court File No. 22, Defendants' Reply Brief, p. 5 ("Plaintiffs do not allege that these defendants took any action in Tennessee."). By taking no actions in Tennessee, Defendants have not created a substantial connection with the forum state sufficient to justify the exercise of personal jurisdiction. *Burger King*, 471 U.S. at 476. Haling Defendants

---

[12] The Court takes judicial notice of the fact that Chattanooga, Tennessee is approximately 75 miles from Rome, Georgia.

into district court in the Eastern District of Tennessee "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party" ignores the requirement of the "purposeful availment" prong. *Air Products*, 503 F.3d at 553.

Plaintiffs' most promising argument under the purposeful availment prong–that Defendants "placed false charges" against Plaintiffs, and "used this incorrect information to involve numerous" entities located in Tennessee–must also fail. This theory finds some support in *Calder v. Jones*, 465 U.S. 783 (1984), where the Supreme Court held personal jurisdiction in California over a reporter and editor located in Florida was proper "because [] their intentional conduct in Florida [was] calculated to cause injury to [the plaintiff] in California, *id.* at 791.[13] Yet *Calder* ultimately proves too slim a reed to support a finding of jurisdiction in this case for three reasons. First, the facts in *Calder* are substantially different than those before the Court here. In *Calder*, the defendants published an allegedly libelous story about a celebrity, drawing on sources in California, in a national magazine which published 600,000 issues weekly–more than twice any other state–in California. Indeed, the defendants' "intentional, and allegedly tortious, actions, were expressly aimed at California" by writing and editing an article "they knew would have a potentially devastating impact upon [the plaintiff]." *Id.* at 789. The Supreme Court thus held the cumulative effects on the plaintiff in California justified the exercise of personal jurisdiction in that state. Here, by contrast, nothing in Plaintiffs' complaint indicates Defendants' action were "expressly aimed at" Tennessee, or that Defendants knew–or should have known–any actions Defendants took would have a "potentially devastating impact upon" Plaintiffs.

The apparent factual dissimilarity between *Calder* and this case underscores the second

---

[13] Neither Plaintiffs nor Defendants discuss *Calder* in their briefs.

14

Case 1:11-cv-00194-CLC-SKL   Document 23   Filed 02/09/12   Page 14 of 19   PageID #: 101

reason reliance on *Calder* is inapposite here. Simply put, Plaintiffs have failed, in making the allegation in their response brief that Defendants "placed false charges" against them, to describe the alleged misconduct to which they are referring. Although the Court interprets Plaintiff's *pro se* complaint more liberally than a complaint of a represented party, the complaint must nonetheless give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard*, 76 F.3d at 726; *Gazette*, 41 F.3d at 1064. Here, however, Plaintiffs have not done so.[14] Defendants–as well as the Court–remain in the dark regarding what the alleged proscribed conduct "expressly aimed at" the state of Tennessee was.

The final reason *Calder* cannot support the imposition of specific personal jurisdiction in this case is the narrow construction applied to it in the Sixth Circuit. *Air Products*, 503 F.3d at 552 ("The Sixth Circuit, as well as other circuits, have narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong.") (citation omitted). Thus, to succeed on getting personal jurisdiction over out-of-state defendants under *Calder*, a court must make two determinations. First, the plaintiff must do more than merely allege intentional tortious conduct which has injured a forum state resident. *Id.*; *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir.1995) (reviewing post-*Calder* cases). Second, a court treats intentional

---

[14] In their complaint, Plaintiffs do allege Defendants "invaded our privacy, published these false charges and our photos in the public newspapers and magazines in both Georgia and the state of Tennessee where we live" (Court File No. 2, Complaint, at p. 3). But Plaintiffs do not provide any further details, including the date, publication, alleged statements made in the publications, etc. The Court finds this single sentence falls short of Plaintiffs' requirement, under Rule 8 of the Federal Rules of Federal Procedure, to provide "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995).

tortious conduct aimed at a plaintiff's forum state as an enhancement of a defendant's underlying contacts with that state, and not necessarily as a stand-alone basis to create specific personal jurisdiction. *Scotts Co. v. Aventis S.A.,* 145 F.App'x. 109, 113 n. 1 (6th Cir.2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises.") (citations omitted).

Here, the exercise of personal jurisdiction under *Calder* cannot be supported on either approach outlined by the Sixth Circuit. First, Plaintiffs have offered only "mere allegations" of intentional tortious conduct by Defendants. Moreover, these allegations are vague, and–as discussed–fail to provide Defendants fair notice of the allegedly tortious conduct. Second, the records shows Defendants not to have any underlying contacts with Tennessee. Tennessee, moreover, was not in any way "the focus of the activities of the[Defendants] out of which the suit arises." *Id.* Thus, treating Defendants' alleged intentional tortious conduct of Plaintiffs in Tennessee as an enhancement of Defendants' already existing contacts with Tennessee is nonsensical: Defendants have no such existing contacts. Thus, personal jurisdiction under the *Calder* "effects test" is inappropriate here.

Accordingly, Defendants have not purposefully availed themselves of the privilege of acting in Tennessee or causing a consequence in Tennessee under the first prong of the *Southern Machine* test. Having found the first prong deficient, the Court's inquiry is ostensibly at an end. The Court will, however, briefly explain why Plaintiffs' complaint also fails to satisfy the second and third prongs of the test.

16

On the second prong, Plaintiffs must show by a preponderance of the evidence that the cause of action "arises from" Defendants' actions in Tennessee. *S. Mach.*, 401 F.2d at 381. Although the Sixth Circuit has formulated the test for this prong in different ways, *see Air Products*, 503 F.3d at 553, the basic test looks at whether a plaintiff's cause of action arises from "Defendants' contacts with the forum state as well as actions directed at the forum state." *id.* Here, the record indicates Defendants have no contacts with Tennessee, so the cause of action cannot arise from such (nonexistent) contacts. Moreover, for the same reasons the insufficient allegations of Defendants' allegedly intentional tortious conduct cannot support a finding of purposeful availment under *Calder* on the first prong, Plaintiffs cannot plausibly rely on these allegations to establish their cause of action arises from Defendants "actions directed at" Tennessee. To the extent Plaintiffs have viable causes of action, they arise from Defendants' action in Georgia, not Tennessee.

If a court determines specific jurisdiction is proper under the first two prongs–which the Court has not here–it then must decide whether imposition of personal jurisdiction is reasonable. *S. Mach.*, 401 F.2d at 381. Because the balance of factors considered in making this inquiry tilts in favor of Georgia, the Court concludes imposition of personal jurisdiction here would not be reasonable.[15] First, the burden on Defendants, while not great, is noteworthy. They are all employees of Dade County, Georgia, and being haled into court in Tennessee would be unduly burdensome. At the same time, the Court recognizes the geographical distance Defendants would have to travel is not onerously far. Thus, this factor points slightly in favor of Defendants. Second,

---

[15] As noted above, the Court considers four factors in making the reasonableness determination: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

17

Tennessee has no strong interest in resolving this dispute. Plaintiffs are residents of Tennessee, and Tennessee does have an interest in safeguarding the rights of their residents. But there is no indication a federal court in Georgia would be any less able to secure the rights of Tennessee citizens than a federal court in Tennessee would.[16] Accordingly, this factor is neutral. Third, although Plaintiffs' interest in obtaining relief is important, there is again no reason to suppose such relief could not be had in a federal court in Georgia. Finally, the most weighty factor is other states' interest in securing the most efficient resolution of the controversy. Georgia has a substantial interest in having the legality of public officials of its own state determined by federal courts in Georgia, which will be more familiar with application of Georgia state law.[17] Thus, the balance of these factors thus leads the Court to conclude that the exercise of personal jurisdiction over this case is unreasonable under the third prong of the *Southern Machine* test.

The allegations made by Plaintiffs are serious and troubling, and they should have the opportunity to present these allegations to a court. Plaintiffs' arguments for this Court to retain jurisdiction to decide the case, however, focus on factors largely irrelevant to the proper analysis. Surely their *pro se* status hurts them in this instance. While plaintiffs in our judicial system are often described as masters of the complaint, such mastery cannot overcome jurisdictional rules put in place to ensure a federal court does not overstep its proper bounds. In this case, the relevant jurisdictional rules prevent the Court from reaching the merits of this dispute.

Because Plaintiffs have failed to establish a basis of personal jurisdiction, Plaintiffs'

---

[16] Although Plaintiffs' complaint suggests, but offers little proof of, possible issues of bias in Georgia state court, *see* Court File No. 2, Complaint, at p. 8, the Court finds such concerns inapposite as applied to a federal court in Georgia.

[17] As drafted, the complaint appears to invoke claims only cognizable under state law.

complaint must be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## IV.  CONCLUSION

For the reasons discussed above, the Court will **GRANT** the motion to dismiss filed by Defendants Cannon, McCormick, and Womack (Court File No. 12), and **GRANT** the motion to dismiss filed by Defendants Franklin, Garner, and Payton (Court File No. 15).  As no further matters remain for adjudication, the Court **DIRECTS** the Clerk of Court to **CLOSE** the case.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**